## JOHN W. SHAW *vs.* HENRY GARDNER.

Representations made before the execution of a bill of lading by the consignor oɪ gooɑs shipped under it, as to the depth of water at the place of landing named therein, cannot be given in evidence by the owner of the ship in an action against him by the consignee for the loss of the goods.

Under a bill of lading reciting the shipping of goods on a particular ship to be landed at a certain place, the goods must be landed there from the ship, if it can be done with safety to her.

In an action for the loss of goods shipped under a bill of lading, in which perils of the sea only are excepted, the owner of the ship has no grounu of exception to an instruction to the jury that the burden is on him to prove that they were lost by peɪ ʟs of the sea.

ACTION OF CONTRACT AND TORT for the loss, through the de-fendant's negligence, of some barrels of cement shipped on board the ship Lantao, at New York, under a bill of lading in these terms: " Shipped in good order and well conditioned by the Lawrence Cement Company, on board the ship called the Lan-tao, whereof Barstow is master, now lying in the port of New York, and bound for Boston, Mass. To say, seven hundred bbls. cement, to be landed at Chelsea below bridges, being marked and numbered as in the margin, and are to be delivered in like good order and condition at the port of Boston (the danger of the seas only excepted) unto John W. Shaw & Co. or to thei. assignees." The answer denied negligence, and alleged the loss to have been occasioned by the dangers of the seas and by the interference of the plaintiff or his agent.

At the trial in the superior court of Suffolk at November term 1857, *Huntington,* J. excluded evidence, offered by the defendant, of representations made by the consignors at New York to the master and owner of the Lantao, before the bill of lading was made, as to the depth of water at Chelsea.

The plaintiff contended that the defendant was bound by the bill of lading to carry the cement to Chelsea in the ship Lantao, and had no right to carry it from Boston to Chelsea in a lighter. On this point the defendant called experts, who after the ton-nage of the ship, her draft of water, the fact of her being cop-pered, and the amount of cargo, had been stated to them, testi-fied that the wharf in Chelsea designated by the plaintiff as the place for landing these goods, was, in their opinion, an unsuit-able and unsafe place for the ship Lantao to go to discharge cargo, on account of the danger of the vessel's grounding.

The jury were instructed, " that by the bill of lading the ship-owner was bound to carry the cement to said wharf in Chelsea in the ship Lantao, unless, taking into consideration the size of the vessel, her qualities, her draft of water, the depth of water at the wharf in Chelsea, her having a coppered bottom, and the amount of her cargo, it would have been unsafe, imprudent and dangerous to have taken the vessel there; and if prudent and discreet men in business would not have so done, deeming that

the wharf was an unsuitable and unsafe place for the ship to go to land the cargo, their evidence would be competent, but not controlling; and it would be for the jury to say whether it was proved that it was unsafe and dangerous, in the sense before stated, for the ship to go to said wharf in Chelsea to discharge this cement." The jury were also instructed that the burden was on the defendant to show that the loss occurred from the perils of the sea. The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. G. King,* for the defendant, on the question of the burden of proof, cited *Clarke* v. *Barnewell,* 12 How. 280; *Muddle* v. *Stride,* 9 Car. & P. 380.

*H. F. Durant,* for the plaintiff.

BIGELOW, J. 1. The evidence of representations made by the consignors prior to the execution of the bill of lading was rightly rejected. They were inadmissible to explain or vary the written contract, and as there was no allegation of fraud in procuring the contract of affreightment by which the defendant's agent was deceived, the proposed evidence was immaterial and irrelevant to the issue before the jury.

2. The instructions were sufficiently favorable to the defendant. The fair import of the contract is that the goods were to be landed from the ship at Chelsea. No right of transshipment was reserved by the contract, and none could be exercised, unless the delivery of the cargo could not be accomplished with safety to the vessel without unloading the merchandise.

3. The instruction in relation to the burden of proof, as applied to the facts in evidence, does not seem to us to be objectionable. The case on the part of the plaintiff depended on proof of negligence by the defendant. This would be shown by evidence that the goods were delivered to the defendant and were injured or lost while in his custody. If he would relieve himself from liability, it was incumbent on him to show that the loss or injury was occasioned by the risk excepted from his contract. For all but perils of the sea he was by express agreement responsible. It certainly was not the duty of the plaintiff to prove a negative by showing that the loss did not happen by

perils of the sea. It was in this sense that the expression of burden of proof was used by the judge at the trial, and so un-derstood it was not a misdirection of which the defendant can complain. 2 Greenl. Ev. § 219. *Exceptions overruled*